[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is a civil action in which the plaintiff seeks a judgment declaring the limits or extent of its exposure of liability under a policy of insurance. The originally-named defendant, Marine Distributors, Inc., is a motor carrier to whom the policy was originally issued. That defendant is no longer in business and offers no defense in this action. An intervenor, Guy Bernardin, has appeared as a defendant and answered the action claiming an interest in the coverage afforded by the policy.
The plaintiff, Marine Office of America Corporation, ("the insurer") is an insurance company. It issued a motor truck cargo insurance policy to Marine Distributors, Inc. ("the carrier") which was in effect on or about November 9, 1988, when the carrier agreed to transport a boat's mast from Boston, Massachusetts, to Barrington, Rhode Island. The mast belonged to the intervenor, Guy Bernardin ("the sailor"). While the mast was on the carrier's truck it was broken so that, according to the sailor, it became useless and incapable of being reliably repaired.
The sailor sued the carrier. The insurer undertook to defend the carrier. In his lawsuit the sailor sought the following elements of damage from the carrier:
 "a) the expense of replacing the mast;
 b) additional shipping costs;
 c) additional insurance costs;
 d) additional rigging and outfitting costs;
 e) the expense of having to re-outfit the boat with different sails;
 f) decreased publicity for his venture because, on account of MDI's breaking the mast, Bernardin could not be the first racer to leave, as planned;
 g) a decreased chance to break the New York to San Francisco sailing record because of his late start, and because Bernardin was forced to sail with a greatly inferior replacement mast."
The insurer contends that under the language in its policy it is not exposed to coverage for any amounts of money other than the actual cost of replacing or repairing the mast itself. The sailor says that the insurer's exposure is co-extensive with its insured's liability. The controversy swirls around the construction of the coverage language in the policy.
In paragraph A., captioned "COVERAGE," the insurer said:
 "We will pay for `loss' to Covered Property from any of the Covered Causes of Loss.
 1. Covered Property, as used in this Coverage Form, means property of others in transit under a tariff, bill of lading or slipping receipt. Transit must be via a `Scheduled Vehicle.'"
According to paragraph F, captioned "DEFINITIONS," "Scheduled Vehicle" also means: "e. A trailer being used with a scheduled tractor." The parties have agreed that the sailor's mast was transported by the carrier's truck. The mast was the property of the sailor, not the carrier, in transit under a uniform straight bill of lading issued by the carrier, attached as Exhibit A to the agreed statement. The sailor's mast was "covered property."
"Loss" is defined in paragraph F as follows: "1. `Loss' means accidental loss or damage." The Court assumes that the second time the word loss is used, it is used in its ordinary sense. This definition appears to serve two purposes: (1) to exclude non-accidental losses and damages and (2) to include partial as well as total losses within the scope of meaning of the word "loss."
The statement of agreed facts demonstrate that breaking the mast was both accidental and a total loss. As a result the general definition of "loss" applies to the mast after it was broken.
According to Paragraph A. 3. of the policy:
 "Covered Causes of Loss means `loss' for which you are legally liable as a motor carrier, or as an independent contractor under lease to a motor carrier while the goods are in your custody or control. Covered Causes of Loss does not mean your liability for `loss' from those causes by `loss' listed in the Exclusions." (Emphasis provided.)
Put another way, this policy is a liability insurance policy and will cover the sailor's loss if the carrier is liable, unless the cause of loss is expressly excluded by the policy.
The insurer points to Paragraph B, boldly captioned "EXCLUSIONS", which includes the following language, which the insurer says plainly excludes a portion of the sailor's claimed loss:
 "1. We will not pay for `loss' caused by or resulting from any of the following:
 a. Loss of market or loss of use;" (Emphasis supplied).
The insurer argues that a portion of the damages claimed by the sailor in his civil action against the carrier are caused by or result from the sailor's loss of use of the mast.
The sailor argues that the language "loss of use" is so vague and ambiguous that is must be judicially construed, and construed favorably to the insureds and beneficiaries of the policy. The insurer counters that the Court should not stretch its imagination in order to read ambiguity into a policy where none is present. See Mullins v. Federal Dairy Co., 568 A.2d 759, 762 (R.I. 1990).
It is possible that there are those among us who cannot tell the difference between loss or damage caused by loss of the use of covered property and that caused by loss of that property itself. That distinction is particularly acute in the case of unique property such as the sailor claims the mast to have been. The mast, itself, since the sailor probably used money to buy it, had a money equivalent, either its price or the cost of replacement. Since it had a money equivalent it could be insured with some reasonable calculation of the amount of risk of loss to which an insurer might be exposed.
The mast, as used by the sailor, who describes himself as "an internationally famous single-handed sailor" out to set a world single-handed sailing record between New York and San Francisco around Cape Horn, was of inestimable value. To insure against such a risk of loss any rational person would have expected special arrangements to have been made between the sailor, the carrier and the insurer. The use of plain language to exclude the extraordinary risks, such as the one claimed here, arising out of losses of use is entirely understandable and entirely clear.
Accordingly, the limit of the insurer's coverage is the equivalent in money damages of the mast itself. The sailor has claimed the expense of replacing the mast as part of his damages, but he claims that the mast was, as a practicable matter, irreplaceable so he was compelled to use a substitute. In order to make the substitute into as close a replacement as possible, it was necessary to ship it to the boat-yard and insure it in transit. These expenses are really part of the cost of replacing the covered property with an acceptable substitute, and are covered causes of loss under the policy.
In order to constitute the substitute as a true replacement the sailor claims it was necessary to change the rigging and outfitting on his boat and to change the sails. The sailor incurred these costs not because he lost the original mast, but because he lost its use. If the original mast had not been unique, it could have been replaced by an exact duplicate and there would have been no cost of changed sails, rigging and outfitting. Although not without some doubt, this Court finds these losses are the kind of unpredictable and limitless ones which the exclusion is plainly meant to leave to the owner to protect himself against specially, or to insure himself against, if he or she wishes.
Finally, the sailor wants damages for the decreased publicity and his failure to break the record. Even if a jury could assess a money value to compensate the sailor for these losses, no rational insurer could ever be expected to insure against them without a special premium and a precise limitation of the scope of coverage and amount of loss. This Court can only conclude that it was specifically to exclude such claims of loss as these that the "loss of use" exclusion was written into the policy.
Since there is no final judgment in Guy Bernardin vs. MarineDistributors, Inc., C.A. No. PC 89-0740, this case is not in order for a final judgment. The defendant, in that case, defended by the plaintiff in this one, might prevail, rendering this action moot. The defendant in that case, even if it does not prevail, may not be assessed damages for the claims not covered, so this case will also be moot. Only if damages are awarded specially against the carrier for the claims subject to the policy exclusion will this case be in order for final judgment.
In the meantime partial summary judgment may enter in accordance with this decision pending final judgment. The plaintiff will present a form of partial summary judgment for entry upon notice to the defendant.